# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

| | |
|---|---|
| D'MONTERRIO GIBSON, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION No. 5:24CV40-DCB-LGI |
| FEDERAL EXPRESS CORPORATION, | ) |
| Defendant. | ) |

### DEFENDANT FEDERAL EXPRESS CORPORATION'S
### MEMORANDUM OF LAW IN SUPPORT OF ITS
### MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Fed. R. Civ. P. 12(c), Defendant Federal Express Corporation ("FedEx") files its Memorandum of Law in Support of its Motion for Judgment on the Pleadings to dismiss Plaintiff D'Monterrio Gibson's ("Gibson") Complaint (DE 1)[1] as follows:

## INTRODUCTION

Gibson is a former FedEx courier who was employed at its station in Jackson, Mississippi. On January 24, 2022, while attempting to make a delivery in a residential subdivision within his assigned delivery route, two individuals pursued and fired multiple shots at him (hereinafter referred to as the "incident"). Although Gibson was not physically injured, he alleges he suffered emotional distress because of the incident. Gibson alleges that FedEx expected him to work his assigned route in the days following the incident, and he expressed anxiety about doing so, which is the basis of his intentional infliction of emotional distress ("IIED") claim against FedEx.

---

[1] For ease, FedEx cites to the docket entry as it was file-stamped in the state court proceedings.

As a matter of law, Gibson's IIED claim fails because his Complaint does not allege FedEx engaged in conduct that would satisfy the high threshold of outrageous and extreme behavior that goes beyond all possible bounds of decency and is utterly intolerable in a civilized community. Additionally, workers' compensation is Gibson's exclusive remedy; he received these benefits; and thus his IIED claim is barred.

For the reasons set forth herein, FedEx's Motion for Judgment on the Pleadings should be **GRANTED**.

## LAW AND ARGUMENT

A.  *As a matter of law, Gibson's IIED claim fails because FedEx's alleged employment action does not rise to the level of extreme and outrageous behavior.*

As a general rule, "damages for intentional infliction of emotional distress are usually not recoverable in mere employment disputes." *Spiers v. Oak Grove Credit, LLC,* 328 So. 3d 645, 653 (Miss. 2021) (citation omitted); *see also Lee v. Golden Triangle Planning & Development Dist., Inc.*, 797 So. 2d 845, 851 (Miss. 2001) (recognizing an IIED claim ordinarily will not lie in employment cases and that IIED claims in the workplace environment are usually limited to "cases involving a pattern of deliberate, repeated harassment over a period of time"); *Woodson v. Mississippi Space Servs.*, No: 1:05cv426WJG-JMR, 2007 U.S. Dist. LEXIS 49196, *13 (S.D. Miss. July 6, 2007) ("Employment disputes generally do not fall within this [IIED] territory.") This rarity is based on courts' recognition that "[o]nly in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of [IIED]." *Spiers*, 328 So. 3d. at 653. Notably, under Mississippi law, it is the nature of the alleged act itself (allegedly requesting Gibson perform his normal route), not the seriousness of the consequences, that gives rise to legal redress for IIED. *See e.g., Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013).

2

The Mississippi Supreme Court has repeatedly explained the extraordinarily daunting threshold for which conduct must rise to sustain an IIED claim, including the following proclamations –

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996) (citing Restatement (Second) of Torts § 46 cmt. d.)

> It is not enough . . . that the employer's conduct leading to the injury consists of aggravated negligence or even that the conduct goes beyond this to include such elements as knowingly permitting hazardous conditions to exist or willfully failing to furnish a safe place to work or **knowingly ordering the employee to perform a dangerous job**.

*Franklin Corp. v. Tedford*, 18 So. 3d 215, 221 (Miss. 2009) (emphasis added).

Specific to Gibson's allegations, a Mississippi federal court addressed the exact issue of whether an employer asking an employee to perform his ordinary job duties can constitute conduct that rises to this exceptionally high standard to support an IIED claim. *See Howard v. Hancock Med. Ctr.*, No. 1:05CV334KS-MTP, 2006 U.S. Dist. LEXIS 87405 (S.D. Miss. Dec. 1, 2006). In *Howard*, the plaintiff asserted an IIED claim after she was fired for not reporting to work to perform her ordinary healthcare duties during a hurricane. The court found that requesting the plaintiff perform her job duties fell "***well short***" of what is required for plaintiff to have a viable claim for intentional infliction of emotional distress." *Id.* at *23 (emphasis added). The facts in *Howard* are analogous to the facts in the present case. FedEx's alleged conduct – asking Gibson on January 25 to perform his regularly assigned route – is not conduct indicative of the "pattern of

3

deliberate, repeated harassment over a period of time" described in *Lee* or conduct that "move[s] out of the realm of an ordinary employment dispute into the classification of extreme and outrageous" conduct as described in *Spiers*.

*Spiers* is another case that exemplifies how an IIED claim is considered in the employment context. In *Spiers*, the plaintiff alleged that her supervisor referred to her pregnancy as a disease, her employer refused to hire another pregnant person, and her employer terminated her for being pregnant. However, the court dismissed plaintiff's IIED claim finding she failed to meet the 'outrageous and extreme' threshold to sustain an IIED claim. *See Spiers*, 328 So. 3d at 654-55. In reaching this conclusion, the court stated that "proving [IIED] in Mississippi is a 'tall order'" and reiterated only the most egregious conduct – such as a "threat of violence or similar conduct" – would suffice to state a claim for IIED. *Id*. at 654.

For comparison, the *Spiers* court cited *Jones v. Fluor Daniel Servs. Corp*., 959 So. 2d 1044 (Miss. 2007) as a case that met the exceptionally high IIED threshold. In *Jones*, the African American plaintiffs alleged they were called "monkeys," segregated from other employees, required to perform harder manual labor than other employees, subjected to **lynching references by their manager**, and terminated. *See id.* at 1048. Because the plaintiffs' manager made a historically racially motivated reference to extreme violence, in addition to the other misconduct, the Mississippi Supreme Court found that the plaintiffs' IIED claim could proceed to a jury. *See id.* at 1050. In contrast with the allegations in *Jones*, Gibson does not even allege that a FedEx employee intended for him to be harmed.

Because FedEx's alleged conduct does not demonstrate a "pattern of deliberate, repeated harassment over a period of time" by any FedEx employee, it is neither "extreme nor outrageous" as required to support Gibson's IIED claim.

4

B. *Gibson's IIED claim is preempted by Mississippi's Workers' Compensation Act (MWCA).*

As a result of the emotional distress caused by the incident, Gibson filed a workers' compensation claim under Mississippi law. *See* March 11, 2022 Petition to Controvert filed with the Mississippi Workers' Compensation Commission attached hereto as **Exhibit A**.[2] As a result, Gibson received the maximum weekly percentage of his average weekly pay in workers' compensation benefits and an additional $159,900 through settlement of his workers' compensation claim with FedEx. *See* FedEx's Answer, Affirmative Defense 3, Exhibit A attached thereto (DE # 13).

The MWCA provides, in pertinent part, as follows:

> The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee . . . and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death . . . .

Miss. Code Ann. § 71-3-9.

This exclusivity of remedy provision is the product of the "bargain" that is the MWCA. Pursuant to this bargain, employees gain the benefit of compensation for all work-related injuries without reference to fault. *See Doe v. Mississippi Baptist Med. Ctr.*, No. 3:00-cv-640BN, 2001 U.S. Dist. LEXIS 26516, *59 (S.D. Miss. Sept. 14, 2001) ("[U]nder Mississippi Workers Compensation law, injured employees are assured recovery for their job-related injuries but, generally lose the right to sue their employer in civil tort actions.") The exclusive remedy will operate as a defense based on immunity in a lawsuit for damages against an employer who has an

---

[2] The Court can take judicial notice of this filing without converting FedEx's motion for judgment on the pleadings into one for summary judgment. *See, e.g., Stiel v. Heritage Numismatic Auctions, Inc.*, 816 Fed.Appx. 888, 892 (5th Cir. 2020) (reaffirming that a district court may consider sources outside of the Complaint on a Rule 12(b)(6) motion, such as matters of public record, court orders, judgments, and other documents whose authenticity is unquestioned without converting it into a Rule 56 motion). As noted in the Petition, Gibson's workers' compensation claim and the Petition itself were filed by Carlos Moore, his counsel in this lawsuit.

obligation under the MWCA. Therefore, because FedEx was obligated to provide Gibson workers' compensation benefits and, in fact, provided him these benefits for his emotional distress damages arising from the incident, – the same conduct described in his Complaint that forms the basis for his IIED claim – his IIED claim must be dismissed as a matter of law.

C.   *Gibson's IIED claim does not fall within the narrow exception to workers' compensation exclusivity.*

First, to avail himself of the narrow exception to workers' compensation exclusivity, Gibson must allege that his emotional distress is **not** compensable under the MWCA. *See Miller v. McRae's, Inc.*, 444 So. 2d 368, 371-72 (Miss. 1984). However, Gibson's emotional distress was compensable under the MWCA, and he was compensated for his injuries. The Mississippi Supreme Court addressed whether intentional torts, similar to Gibson's claim, are compensable under the MWCA. *See Mutual Implement & Hardware Ins. Co. v. Pittman*, 214 Miss. 823, 828 (1952) (holding that the worker's brain injury resulting from a co-worker striking him on the back of the head with a shovel was compensable and covered by the MWCA exclusivity provision); *Seal v. Industrial Elec.*, 395 F.2d 214, 215 (5th Cir. 1968) (applying Mississippi law and holding that injured worker's claim for damages resulting from a beating by his supervisor was compensable and covered by the exclusivity provision of the MWCA).

Specifically with regard to Gibson's claim of emotional distress, the Mississippi Supreme Court held that a claim of emotional distress resulting from an employer's conduct is a claim compensable under the MWCA. *See Borden, Inc. v. Eskridge*, 604 So. 2d 1071, 1074 (Miss. 1991) (holding that a claim of severe mental distress in the form of "major depression of psychotic proportion" resulting from a supervisor's "course of conduct" and "designed to cause the claimant to leave the employment" is a claim compensable under the MWCA.)

Second, The Mississippi Supreme Court has recognized that "Mississippi is in concurrence with an overwhelming majority of states in requiring an 'actual intent to injure' the employee." *Franklin Corp.*, 18 So. 3d at 221.  The Court repeatedly held that, "in order for a willful tort to be outside the exclusivity of the [MWCA], the employe[r]'s action must be done with an actual intent to injure the employee."  *Griffin v. Futorian Corp.*, 533 So. 2d 461, 464 (Miss. 1988); *see also Pinnacle Trust Co. v. Babcock & Wilcox Power Generation Group, Inc.*, No. 1:11CV02-SA-SAA, 2013 U.S. Dist. LEXIS 149471, *7 (N.D. Miss. Oct. 17, 2013).  A "mere willful and malicious act is insufficient to give rise to the intentional tort exception to the exclusive remedy provisions of the [MWCA] . . . . Reckless or grossly negligent conduct is not enough to remove a claim from the exclusivity of the [MWCA]."  *Blailock v. O'Bannon*, 795 So. 2d 533, 535 (Miss. 2001).

For Gibson's IIED claim against FedEx to fall outside the MWCA and survive this motion for judgment on the pleadings, he was required to allege that FedEx actually intended to injure him with full knowledge that he would be injured and with the purpose of the action being to cause injury to him.  *See Bowden*, 120 So. 3d at 976; *Pinnacle Trust Co.*, 2013 U.S. Dist. LEXIS at *7 (N.D. Miss. Oct. 17, 2013).  And, to plead such a provocative and incredible allegation, Gibson would have to have a good-faith basis for doing so, which he does not.  *See* F.R.C.P. 11(b)(3)

Gibson only alleges he returned to work on January 25 and was expected to perform his same delivery route, which he attempted to complete before experiencing "severe panic and anxiety."  *See* Complaint, DE 1, PageID #5, ¶¶ 22-23.  That same day, after going with his supervisor to provide a statement to the Brookhaven police department, Gibson alleges FedEx asked him to perform his assigned route, at which time he told his supervisor that "he felt

7

uncomfortable performing the route."³ *Id.* at ¶¶ 25-26. On January 26, 2022, he began medical leave for his anxiety following the incident. *Id.* at ¶ 27. Under similar factual circumstances, Mississippi courts have found that an employer asking an employee to perform his job duties, whether or not he thinks they are dangerous, does not constitute an intent to harm. *See Fulton v. Baxter Healthcare Corp.*, No. 2:05CV-95-P-B, 2005 U.S. Dist. LEXIS 31650 at *3 (N.D. Miss. Nov. 21, 2005) (granting employer's motion to dismiss and finding plaintiff's allegation that "the Defendant knew [her] work environment was dangerous" insufficient to bring her claims outside the province of [the MWCA]").

Gibson pleads no facts from which the Court could infer that FedEx intended to harm him, with full knowledge that he would be harmed and with the purpose to cause him injury, as required by the Mississippi Supreme Court. To the contrary, the allegations in Gibson's Complaint demonstrate FedEx's intent to *support*, not injure, him. In addition to pleading that his supervisor accompanied him to provide a statement to police, Gibson also alleges FedEx encouraged him to see a therapist, reminded him that the company would cover eight (8) free therapy sessions, and offered him two weeks off.⁴ *See* Complaint, DE 1, PageID #5, ¶¶ 24, 26. These efforts to support Gibson following the incident contradict an intent to harm him. *See, e.g., Bowden*, 120 So. 3d at 980 (affirming the dismissal of the plaintiffs' IIED claims on a 12(b)(6) motion and finding the defendant employer's effort to support the plaintiff "leads to the inevitable conclusion that the

---

³ FedEx adamantly denies Gibson's allegation that, after the incident, FedEx requested he perform the part of his route in the Junior Trail neighborhood where the incident occurred, but for purposes of this motion, only the facts as Plaintiff alleged are relevant.

⁴ FedEx also settled Gibson's workers' compensation claim for an additional $159,900. *See* FedEx's Answer, Affirmative Defense 3, Exhibit A attached thereto (DE # 13).

actions of [the employer] were not done with the *actual intent* to inflict emotional distress upon the plaintiffs") (emphasis added).

In sum, FedEx's alleged employment action does not constitute actual intent to injure Gibson that would circumvent the MWCA's exclusive remedy provision, and his emotional distress is compensable under the MWCA. As the Mississippi Supreme Court promulgated time and time again, "few cases have escaped the Act's 'powerful grasp' of exclusivity," including most IIED cases. *In re Estate of Gorman ex rel. Gorman v. State*, 307 So. 3d 421, 425 (Miss. 2020) (quoting *Bowden*, 120 So. 3d at 977). For these reasons, Gibson's Complaint fails to state an IIED claim.

## CONCLUSION

Based on the foregoing, FedEx moves this Court to enter an Order granting its Motion for judgment on the pleadings to dismiss Gibson's IIED claim *with prejudice* and award FedEx such other and further relief to which it may be entitled.

Dated: April 22, 2024

*s/ Michael C. Williams*
Michael Williams (MS Bar #104537)
**BRADLEY ARANT BOULT CUMMINGS LLP**
One Jackson Place
188 East Capitol Street, Suite 1000
Jackson, MS 39201
Tel 601-592-9918
Fax 601-592-1418
mcwilliams@bradley.com

*Attorney for Defendant Federal Express Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2024, a copy of the foregoing was served on the parties listed below via the Court's ECF System:

Carlos E. Moore
**THE COCHRAN FIRM – MS DELTA**
306 Branscome Drive
P.O. Box 1487
Grenada, MS 38902-1487
Tel 662-227-9940
Fax 662-227-9941
cmoore@cochranfirm.com

*Attorney for Plaintiff*

                                            *s/ Michael C. Williams*